IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LOUIS VUITTON MALLETIER, S.A.S., | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:23-cv-2569-L |
| KEEP IT GYPSY, INC. AND CARMEN GEOATES, | § § § | |
| Defendants. | § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendants Keep it Gypsy, Inc. and Carmen Geoates have filed a Motion to Dismiss ("Motion"). *See* Dkt. No. 16.

Plaintiff Louis Vuitton Malletier, S.A.S., ("Louis Vuitton") filed a response, *see* Dkt. No. 18, and Defendants filed a reply, *see* Dkt. No. 19.

United States District Judge Sam A. Lindsay has referred this motion to the undersigned United States Magistrate Judge for hearing, if necessary, and findings, conclusions, and a recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 17.

For the reasons explained below, the Court should deny Defendants' Motion to Dismiss [Dkt. No. 16].

**Background**

This case concerns trademark violations, unjust enrichment, and unfair competition. Plaintiff Louis Vuitton Malletier, S.A.S. ("Louis Vuitton") filed a

complaint in federal court against Defendant Keep it Gypsy, Inc. ("KIG") and its president Carmen Geoates alleging trademark counterfeiting (15 U.S.C. § 1114), trademark infringement (15 U.S.C. § 1114), false designation of origin and unfair competition (15 U.S.C. § 1125(a)), dilution (15 U.S.C. § 1125(c)), trademark dilution under state law (Tex. Bus. Com. Code § 16.103), common law trademark infringement, unjust enrichment, and common law unfair competition. *See* Dkt. No. 1 at 19-24. Louis Vuitton seeks "injunctive relief and monetary relief including trebled or statutory damages, pre-judgment interest, disgorgement of profits, attorneys' fees and costs under the Lanham Act and Texas state law resulting from Defendants' [alleged] willful and intentional sales of infringing handbags, apparel, and accessories displaying Louis Vuitton's trademarks." *Id.* at 1.

"Louis Vuitton products are sold exclusively through stores "owned and operated by Louis Vuitton affiliates, … through the Louis Vuitton website at http://us.louisvuitton.com," and through the website of Le Bon Marche, at http://www.24s.com. *Id.* at 4. "Louis Vuitton is the owner of numerous famous federally[]registered trademarks" like the "LOUIS VUITTON word mark, the Toile Monogram Design mark, the LV logo Design mark, and the Stylized Flower Design [M]arks." *Id.*

Louis Vuitton's investigators observed and purchased the Defendants' products offered for sale at the Dallas Market Center and in boutiques located in Texas, Missouri, Oklahoma, Louisiana, Arkansas, New York, Michigan, and Tennessee. *See id.* at 16-17. At the Dallas Market Center, Louis Vuitton's

investigators spoke to Ms. Geoates who said that the goods were for sale "with or without 'Louis'" and "for products offered without [Louis] the price is a lot less." *Id.* at 17.

"On March 29, 2019, an investigator for Louis Vuitton served a cease-and-desist letter to Defendant KIG," addressed to Geoates, stating that KIG was infringing on Louis Vuitton's intellectual property rights. *Id.* The counsel for KIG responded denying that KIG used counterfeit Louis Vuitton materials or that KIG tried to represent its materials as Louis Vuitton. *See id.* at 18. The alleged infringing products included wallets, handbags, backpacks, jewelry, key chains, apparel, hats, and other accessories marked with Louis Vuitton trademarks. *See id.* Louis Vuitton claims that further investigation uncovered Geoates' continuous sale of infringing products at Dallas Market Center, through KIG's website, and through the company's retail customers. *See id.* Louis Vuitton believes that KIG will continue to produce, distribute, supply, and sell the infringing products resulting in "irreparable harm to Louis Vuitton." *See id.* at 19.

Defendants filed a Motion to Dismiss, asserting that the doctrine of laches renders Louis Vuitton's claims for relief "legally untenable" because Louis Vuitton had a "four-plus-year" delay in filing its complaint. Dkt. No. 16 at 1.

Defendants maintain that Louis Vuitton filed its state law claims for unjust enrichment and unfair competition "years after" the corresponding two-year limitations periods expired. *See id.* at 1,7.

Louis Vuitton asserts that (1) its cease-and-desist letter "placed Defendants on notice"; (2) Defendants' motion to dismiss does not establish prejudice; (3) the motion to dismiss does not show that the Complaint contains facts conclusively establishing a lack of excuse for delay; and (4) Louis Vuitton's state law claims are not barred by statutes of limitations. Dkt. No. 18 at 4-9.

## Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not

contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this

case, as the Court "must construe the pleadings of pro se litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources

courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

## Analysis

### I.     Laches does not justify the dismissal of Louis Vuitton's Lanham Act claims.

The doctrine of laches bars a plaintiff's claims when there is an unexcused delay in filing suit that prejudices the defendant. *See Russell v. Todd*, 309 U.S. 280, 288 (1940).

"The Lanham Act does not contain a statute of limitations[,] … [so] federal courts refer to analogous state statutes of limitations to aid in determining what length of delay is excusable for purposes of laches. *See Mary Kay, Inc. v. Weber*, 601 F.Supp.2d 839, 859 (N.D. Tex. 2009). In Texas, the analogous state statute of limitations for a Lanham Act violation is four years. *Id.* at 859-60.

"A defendant can raise a laches defense in a motion to dismiss," but the complaint must affirmatively show that laches bars the claim for the court to grant the motion to dismiss. *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, No. 3:17-CV-0054-B, 2018 WL 1806500, at *8 (N.D. Tex. Apr. 17, 2018) (citing *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958)).

"Affirmative defenses are generally not appropriate grounds to dismiss a complaint under a Rule 12(b)(6) motion, unless a successful defense is apparent from the facts pleaded and judicially noticed." *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F.Supp.2d 654, 669 (S.D. Tex. 2013) (cleaned up). "To obtain

a 12(b)(6) dismissal based on [the] affirmative defense" of laches, "the successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Read-A-Thon Fundraising Co. v. 99Pledges, L.L.C.*, No. 3:22-CV-0420-D, 2022 WL 2704043, at *2 (N.D. Tex. July 12, 2022) (cleaned up).

Courts do not commonly grant a dismissal "under 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Siverston v. Clinton*, No. 3:11-cv-836-D, 2011 WL 4100958, at *2 (N.D. Tex. Sep. 14, 2011) (cleaned up).

For Defendants' motion to dismiss succeed, Louis Vuitton must "plead [itself] out of court" by admitting all of the elements of a laches defense. *Id.* (cleaned up).

To establish a laches defense in a trademark dispute in a Rule 12(b)(6) motion to dismiss, the defendant must show (1) the plaintiff delayed in asserting their trademark rights, (2) lack of excuse for the delay, (3) the delay caused undue prejudice on the infringer. *See Rolex Watch U.S.A., Inc. v. BeckerTime, L.L.C.*, 96 F.4th 715, 723 (5th Cir. 2024) (citing *Am. Rice, Inc. v. Prods. Rice Mill, Inc.*, 518 F.3d 321, 334 (5th Cir. 2008)).

A. <u>Delay in Asserting Rights</u>

Defendants asserts that the delay element is satisfied because Louis Vuitton filed suit four years and seven months after sending a cease-and-desist letter to KIG. *See* Dkt. No. 16 at 4. Defendants emphasize that they responded to the cease-and-desist letter with a denial to each of the allegations. *See id.* Louis Vuitton confirmed that it received the response but never responded to it. *See id.*

The laches period "begins when the plaintiff knew or should have known about the infringement." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998) (citing *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1161-62 (5th Cir. 1982)). And "[a]ny acts after receiving a cease-and-desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts." *Id.* And so, "the period of delay ends once the trademark owner objects to the defendant's use and the defendant receives notice of the objection." *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 709 (S.D. Tex. 2009).

Defendants claim that the laches clock started to toll when they delivered a response to the cease-and-desist letter. *See* Dkt. No. 19 at 4.

But the time that passes after a plaintiff sends a cease-and-desist letter to the defendant does not count for calculating the delay for a laches defense. *See Mary Kay*, 601 F. Supp. 2d at 860 (holding that the three-year delay in filing suit after a cease-and-desist letter did not count for the purposes of laches) (citing *Elvis Presley Enters., Inc*, 141 F.3d at 208); *accord Source, Inc. v. SourceOne, Inc.*, No. 3:05-cv-1414-G, 2006 WL 2381594, at *1, *8 (N.D. Tex. Aug. 16, 2006) (finding that the period of delay for a laches defense stopped after Plaintiff sent Defendant a cease-and-desist letter, even though Defendants responded to the cease-and-desist letter and Plaintiffs had no further contact until filing the lawsuit).

While Defendants contend that sending the period of time between sending the cease-and-desist letter and filing suit is greater than the four-year statute of limitations period, the Fifth Circuit has held that the time between the cease-and-

desist letter and filing does not count for a laches defense. *See Mary Kay*, 601 F.
Supp. 2d at 860. The relevant period of delay is between when the plaintiff had
knowledge of the alleged infringement and when the plaintiff sent the cease-and-
desist letter to the defendants. *See id.*

Neither party specifies the amount of time between when Louis Vuitton first
had knowledge of the alleged infringing behavior and when it sent the cease-and-
desist letter, and Defendants do not argue that this period constituted an
unreasonable delay. *See generally* Dkt. No. 1; Dkt. No. 16.

Courts in the Fifth Circuit have recognized that the time between the cease-
and-desist letter and filing suit can be relevant to undue delay if the delay is
significant. *See Abraham v. Alpha Chi Omega*, 816 F.Supp.2d 357, 362-63 (N.D.
Tex. 2011) (finding that twenty years between a cease-and-desist letter and suit is
undue delay); *H.G. Shopping Ctrs. L.P. v. Birney*, No. H-99-0622, 2000 WL
33538621, at *9 (S.D. Tex. 2000) (finding that a series of cease-and-desist letters
sent over twenty years does not cut off a laches defense); *see generally Wilson v.
Tessmer L. Firm, P.L.L.C.,* 483 F. Supp. 3d 416, 429 (W.D. Tex. 2020) ("Th[e]
acknowledgement of an exception reinforces that the traditional approach in the
Fifth Circuit is to cut off the period of delay upon the receipt of a cease and desist
letter, unless an exception is warranted due to an unusually long period of delay
before filing suit.").

Even if the Court were to consider the four years between the letter and filing
suit as delay, the delay would likely not be long enough to fit this exception. *See*

*Wilson*, 483 F. Supp. 3d at 429 (holding that four years delay between discovering infringement and filing suit does not qualify for the *Abraham* exception).

And, so, the Court should conclude that Defendants do not show that Louis Vuitton delayed in asserting its rights.

B. <u>Lack of Excuse</u>

Defendants contend that the lack of excuse element of its laches defense is satisfied because the complaint does not give an excuse for the four year- seven-month delay. *See* Dkt. No. 18 at 7.

But a plaintiff does not have to anticipate affirmative defenses like laches and "structure its complaint accordingly." *Columbare v. Sw. Airlines, Co.*, No. 3:21-cv-297-B-BK, 2023 WL 406439, at *3 (N.D. Tex. Jan. 10, 2023), *rep. & rec. adopted*, 2023 WL 416548 (N.D. Tex. Jan. 25, 2023) (citing *Nobre v. La. Dep't of Pub. Safety*, 935 F.3d 437, 442 (5th Cir. 2019)).

At the motion to dismiss stage, the Court should view ambiguities in the light most favorable to Louis Vuitton "as the plaintiff is not required to include allegations disproving [Defendants'] affirmative defenses to survive a 12(b)(6) motion." *City of San Antonio v. Time Warner Cable Texas, L.L.C.,* No. SA-17-CV-01232-OLG, 2018 WL 6588564, at *4 (W.D. Tex. Apr. 9, 2018) (citing *Wilson v. Kimberly-Clark Corp.*, 254 F. App'x 280, 287 (5th Cir. 2007)).

And, so, an absence of an excuse in Louis Vuitton's original complaint does not entitle Defendants to dismissal. *See id.* ("[T]he fact that the Petition's

allegations do not disprove the affirmative defense of laches does not mean TWC is entitled to dismissal").

C. Undue Prejudice

Defendants contend that they face undue prejudice when they continued to run their business for over four-and-a-half years after receiving and responding to Louis Vuitton's cease-and-desist letter. *See* Dkt. No. 19 at 5.

"[Undue] [p]rejudice encompasses actions by the defendant that it would not have taken or consequences it would not have suffered had the plaintiff brought suit promptly." *Abraham v. Alpha Chi Omega,* 708 F.3d 614, 624 (5th Cir. 2013) (citing 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:12 (4th ed. 2001)); *see also Rolex Watch USA, Inc.,* 96 F. 4th at 723 (finding that a ten-year delay caused undue prejudice since the defendants built a business that would not have happened if Rolex filed suit without delay).

But Defendants have not shown, at this stage, undue prejudice where the period of delay ended when it received the cease-and-desist letter. Based on those alleged facts, further actions, investments, and consequences occurred at the defendants' own risk. *See Alfa Laval Inc. v. Flowtrend, Inc.*, No. CV H-14-2597, 2016 WL 2625068, at *6 (S.D. Tex. May 9, 2016) ("Under binding Fifth Circuit authority, the period for evaluating a laches defense ended when the March 2008 letter was sent to Flowtrend. After that date, there could be no "undue prejudice.").

And, so, the Court should find that Defendants did not show undue prejudice and should not dismiss their Lanham Act claims.

II.    <u>Louis Vuitton's state law trademark claims are not barred by laches.</u>

Defendants also argue that Louis Vuitton's state law claims should be barred by laches. Dkt. No. 16 at 3-5.

Under Texas state law, a laches claim rests on two elements "(1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay." *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1082 (5th Cir. 1997) (citing *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989)). "Laches is applicable to claims under the Lanham Act, as well as claims at common law and under state trademark registration statutes." *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 758 (Tex. App. – Dallas 2012, no pet.).

Some courts have applied the same standards in determining a laches defense for both federal and state trademark infringement claims. *See id.* at 762 n. 12 ("In this action for infringement, we applied the elements of laches as other courts have done in this context."); *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 50 (Tex. App. – Houston [14th Dist.] 1992, no writ.) ("A common law trademark infringement action under Texas law presents no difference in issues than those under federal trademark actions.")).

A. <u>Unreasonable Delay</u>

Defendants contend that Louis Vuitton did not communicate with them for over four years after they sent their response denying the infringement allegations

-13-

in the cease-and-desist letter. *See* Dkt. No. 16 at 4. And the complaint does not allege any excuse for the delay. *See id.*

But a "[m]ere lapse of time raises no presumption of laches. It must be an unreasonable delay which has worked injury to another person." *See Gulf, C. & S. F. Ry. Co. v. McBride*, 322 S.W.2d 492, 500 (Tex. 1958) (citing *Turner v. Hunt*, 116 S.W.2d 688, 691 (Tex. Comm'n App. 1938)).

As discussed above, at this pleadings stage, there is no basis to find undue delay because the relevant period of delay is between when Louis Vuitton knew of the mark and when Louis Vuitton sent the cease-and-desist letter to KIG, effectively putting them on notice.

B. <u>Detriment</u>

Defendants argue that the prejudice element of the laches defense is satisfied because it responded to Louis Vuitton's cease-and-desist letter denying unlawful conduct and Louis Vuitton did not communicate with KIG again for over four and a half years. *See* Dkt. No. 16 at 5. And, so, KIG continued to sell what it believed where lawful products. *See id.*

"Whether phrased as 'reliance' or 'prejudice,' the effect is the same – the defendant has done something it otherwise would not have done absent the plaintiff's conduct." *Condom Sense*, 390 S.W.3d at 761.

A delay becomes inequitable when a plaintiff does not enforce its rights until a defendant in good faith makes irreversible changes. *See City of Houston v. Muse*, 788 S.W.2d 419, 422 (Tex. App. – Houston [1st Dist.] 1990, no writ).

Lack of knowledge and lack of notice of the plaintiff's claim are key in showing that a defendant changed their position in good faith to their detriment. *See Fort Worth v. Johnson*, 388 S.W.2d 400, 404 (Tex. 1964) (holding that there was no evidence in the record that the defendant changed her position to her detriment in good faith because she did not show she lacked actual notice or knowledge); *see also First Nat'l Bank of Trinity, Tex. v. McKay*, 521 S.W.2d 661, 664 (Tex. Civ. App. – Houston [1st Dist.] 1975, no writ) (holding the defendant did not change his position to his detriment in good faith); *Davis v. Mangan*, No. 14-04-00650-CV, 2005 WL 1692048, at *6 (Tex. App. – Houston [14th Dist.] July 21, 2005, no pet.) (prior notice of claim).

Defendants had knowledge and notice that Louis Vuitton objected to its actions when they received Louis Vuitton's cease-and-desist letter in March 2019. *See* Dkt. No. 1 at 17.

Louis Vuitton acted to enforce its rights after its investigators "frequently observed" Ms. Geoates selling and advertising the alleged infringing products. *See id.* The investigators recall Ms. Geoates saying that products offered without the Louis Vuitton mark cost less, and, in October of 2023, the investigators estimated KIG had over 15,0000 products for sale with the Louis Vuitton mark. *See id.* at 17-18.

Because KIG acknowledges the value of the Louis Vuitton mark and continues to act despite the cease-and-desist letter, KIG at this stage has not shown

that it did something that it otherwise would not have done absent Louis Vuitton's conduct. And, so, KIG likely cannot show that it acted to its detriment in good faith.

And "a trial court generally enjoys 'considerable discretion' in deciding whether to apply the doctrine of laches to the claims pending before it." *Condom Sense*, 390 S.W.3d at 759 (citing *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, Tex., 40 F.3d 698, 707 (5th Cir. 1994).

And, so, the undersigned recommends the Court exercise its discretion and not apply the defense of laches to these claims at this pleadings stage.

III.    Louis Vuitton's state law unfair competition claim is not time-barred by the statute of limitations or laches at this stage in the pleadings.

Defendants contends that the statute of limitations and laches bars Louis Vuitton's unfair competition claim.

 Unfair competition is a derivative tort requiring the defendant to commit an underlying tort or illegal conduct for liability. *See Baylor Scott & White v. Project Rose MSO, L.L.C.*, 633 S.W.3d 263, 286-87 (Tex. App. – Tyler Aug. 30, 2021, pet. denied). Unfair competition is an umbrella "for statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *See id.* (citing *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App. – Waco 1993, writ denied)).

Unfair competition encompasses objectionable trade practices like misappropriation, dilution, and trademark infringement. *See id.* at 268.

Here, the underlying torts are likely trademark dilution (Count V) and trademark infringement (Count VI). *See* Dkt. No. 1 at 23.

As the "Texas common law elements of unfair competition, including trademark, 'are no different than those under federal trademark law,'" the Court should adopt the same analysis of laches as applied to Louis Vuitton's trademark claims to its common law unfair competition claim based on trademark infringement. *Condom Sense*, 390 S.W.3d at 738.

And, so, the Court should not dismiss its unfair competition claim based on laches at this pleadings stage.

The Court should also not dismiss the unfair competition claim based on Defendants' statute of limitations argument. Courts have applied "a two-year statute of limitations … to Texas common law unfair competition claims based on trademark infringement." *Texas Tamale Co., Inc. v. CPUSA2, LLC*, No. 4:21-CV-3341, 2022 WL 20717359, at *3 (S.D. Tex. June 21, 2022); *accord Daboub v. Gibbons*, 42 F.3d 285, 290 (5th Cir. 1995) (holding unfair competition claim had two-year statute of limitations).

Louis Vuitton argues that its unfair competition claim should be subject to the continuous tort doctrine, making the statute of limitations period inapplicable. Dkt. No. 18 at 10. The continuous tort doctrine provides that a claim does not accrue until the defendant's wrongful conduct stops. *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017) (quoting *First Gen. Realty Corp. v. Md. Cas. Co.*, 981 S.W.2d 495, 501 (Tex. App. – Austin 1998, pet. denied)).

-17-

The Texas Supreme Court has "neither endorsed nor addressed" the continuous tort doctrine, but the Dallas, Waco, and Austin Courts of Appeals have "applied the doctrine in cases of negligent infliction of emotional distress, false imprisonment, and injury-producing medicine." *Id. (*citing *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 924 (Tex. 2013)).

Texas Courts of Appeals have also applied the continuing tort doctrine to trademark infringement. *See Springboards*, 2018 WL 1806500, at *8 ("Texas law treats trademark infringement is a continuing tort") (internal citations omitted); *Two Pesos, Inc. v. Gulf Ins. Co.,* 901 S.W.2d 495, 500–01 (Tex. App. – Houston [14th Dist.] 1995, no writ).

Some courts have held that the unfair competition claims based on trademark infringement are not barred by the statute of limitations. *See Springboards*, 2018 WL 1806500, at *8 (declined to dismiss common law unfair competition claim based on trademark infringement due to statute of limitations or laches, but only discussed that trademark infringement was a continuing tort); *accord Riviana Foods, Inc. v. Golden Star Trading, Inc.*, No. 4:19-CV-01994, 2020 WL 6153602, at *13 (S.D. Tex. Apr. 6, 2020); *Tierra Caliente Music Grp., S.A. de C.V. v. Ser-Ca Discos, Inc.*, No. 7:18-CV-00252, 2022 WL 20344511, at *19 (S.D. Tex. Jan. 26, 2022), *on reconsideration in part sub nom. Tierra Caliente Music Grp. v. Ser-Ca Discos, Inc.*, No. 7:18-CV-00252, 2022 WL 20334777 (S.D. Tex. May 16, 2022) (describing a "continuing violation theory" that "caution[s] against summary

judgment on Plaintiff's affirmative defense of limitations," although finding claims weren't time-barred based on alternative reasoning).

Other courts have held that the statute of limitations applies to unfair competition claims, but that the plaintiff could still bring claims of unfair competition for violations that are inside the statute of limitations period. *See Derrick*, 934 F. Supp. at 808 (examining a motion for summary judgment and finding that "[c]laims for violations within the limitations period will be allowed, but those violations outside the limitations period are time-barred … only those alleged infringements that occurred on or after January 14, 1992 will be considered as evidence of Derrick's common law unfair competition claim"); *accord Horizon Mktg., Int'l, Ltd. v. Naras*, No. CV H-17-3749, 2018 WL 3729569, at *4 (S.D. Tex. Aug. 6, 2018) (dismissing unfair competition claim because, although, common law trademark infringement claim was a continuing tort, an "unfair competition claim accrues when a legal injury occurs" and so plaintiffs were time-barred from asserting unfair competition claims on events more than two years before their claim).

And still other courts have found the statute of limitations barred unfair competition claims based on trademark infringement. *See Texas Tamale Co.*, 2022 WL 20717359, at *4 (setting aside a default judgment because a two-year statute of limitations was "a meritorious defense" to common law unfair competition claims); *accord Gorgeous Gals, LLC v. Hey Gorgeous! Spa & Wellness, LLC*, No. 1:16-CV-903-RP, 2017 WL 5016036, at *8 (W.D. Tex. Nov. 2, 2017) (granting summary

judgment as to plaintiff's unfair competition claim because it was time-barred under the two-year statute of limitations).

But the most procedurally analogous cases have either not dismissed the unfair competition claim at this stage in the pleadings or have dismissed the claim only as to events brought outside the statute of limitations of period. And, so, the Court should not dismiss the claim at this time.

IV.    Louis Vuitton's unjust enrichment claim is not time-barred by the statute of limitations or laches at this stage in the pleadings.

"'Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits,' regardless of whether the defendant engaged in wrongdoing." *Janvey v. Alguire*, 846 F. Supp. 2d 662, 673 (N.D. Tex. 2011) (quoting *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.,* 300 S.W.3d 348, 367 (Tex. App. – Dallas 2009, pet. den.) (citations omitted)).

Under Texas law, the statute of limitations for unjust enrichment is two years. *See United States ex rel. Jackson v. Univ. of N. Tex.*, 673 F. App'x 384, 388 (5th Cir. 2016) (citing *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998)).

To find when an unjust enrichment claim accrues, "Texas follows the 'legal injury' test, under which '[a] cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy.'" *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410 (5th Cir. 2004) (quoting *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)).

Louis Vuitton knew about the alleged infringing conduct as early as 2019 but did not file this suit until 2023. *See* Dkt. No. 1 at 17. Defendants argue that this bars Louis Vuitton's unjust enrichment claim. *See* Dkt. No. 16 at 5.

Louis Vuitton argues that the continuing tort doctrine also applies to its unjust enrichment claim. Dkt. No. 18 at 9-10. The Court finds no case that has applied the continuing tort doctrine to an unjust enrichment claim. But courts have found that "the discovery rule or fraudulent concealment doctrine may apply and toll the statute of limitations, and thus, the limitations issue on the unjust enrichment claim cannot be resolved at this stage in the litigation." *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, No. 415CV00307GHDCMC, 2016 WL 5423178, at *13 (E.D. Tex. Sept. 27, 2016); *accord Emerald City Mgmt., LLC v. Kahn*, No. 4:14-CV-358, 2016 WL 98751, at *31 n.20 (E.D. Tex. Jan. 8, 2016) ("Emerald City argues that the Statute of Limitations bars a claim of unjust enrichment. However, as discussed previously, Emerald City has not met is burden of establishing when Kahn's unjust enrichment claim accrued because Kahn argues that fraudulent concealment tolled the statute of limitations, which is a question of fact.").

And so, the Court should similarly find that whether the continuing tort doctrine tolls the statute of limitations should not be resolved on this Motion to Dismiss.

Because it is unclear whether the statute of limitations has run for the unjust enrichment claim at this stage, the Court should similarly not dismiss the claim as barred by laches at this time. *See Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex.

1998) ("Laches should not bar an action on which limitations has not run unless allowing the action 'would work a grave injustice.'") (quoting *Culver v. Pickens*, 176 S.W.2d 167, 170 (Tex. 1943)).

## Recommendation

The Court should deny Defendants' Motion to Dismiss [Dkt. No. 16].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 8, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE